# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CASCADE CORPORATION and all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SPRINT COMMUNICATIONS COMPANY, L.P., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Docket no. 2:11-cv-125-JAW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT OF TELEPHONIC CONFERENCE

On July 6, 2011, the parties filed a joint motion for certification of a settlement class and for preliminary approval of a class action settlement achieved by the parties. The Court held a telephonic conference with the parties on January 25, 2012, to express concerns and questions, more fully laid out below, that it had with the proposed settlement and proposed notice to the class. The Court requested additional briefing, and the parties requested and received sixty days to provide the Court with their supplemental briefing. Before the Court could file a report of telephonic conference, the parties, on February 13, 2012, filed a stipulation of dismissal.

This case concerns Maine's part in a nationwide phenomenon in which telecommunications companies bargained with railroads for the right to place fiber optic cables through rights-of-way owned by the railroads. In the 1990s, owners of property underlying these rights-of-way began taking action against what they

perceived to be trespass by the telecommunications companies on their property. Whether or not there was a trespass was informed by the grant of rights to the railroads, which often did not include a right to use the right-of-way for non-railroad purposes. In some cases, the right-of-way may have even lapsed through disuse and all rights once owned by the railroad may have reverted to the owners of the fee underlying the right-of-way.

Decades if litigation in numerous jurisdictions involving various railroads and telecommunications companies ensued. The class action format was used to bring together the large numbers of landowners underlying either side of these railroad rights-of-way. An early case, *Hinshaw v. AT&T Corp.*, 1998 WL 1799019, (Ind. Super. Aug. 24, 1998) (unpublished), granted certification to a nationwide class of plaintiffs. However, over the years, the courts handling these cases came to a consensus that the claims involved in this litigation are not susceptible to multi-district litigation. *See e.g. Smith v. Sprint Communications Co. et al.*, 387 F.3d 612 (7th Cir. 2004) (overturning certification of a nationwide class, observing that the settlement "does not provide the 'structural assurance of fair and adequate representation' prior to the settlement itself that Rules 23 demands." (internal citations omitted)), *Gipson v. Sprint Comm. Co.*, 2003 OK CIV APP 89, ¶ 29 (Ok. App. 2003) (denying a nationwide class certification and stating "The *Hinshaw* opinion… ignores the difficulties in managing such a class…"), *Hallaba v. Worldcom Network Services Inc.*, 196 F.R.D. 630 (N.D. Ok. 2000) (denying multidistrict class certification and disagreeing with the *Hinshaw* decision.)

Nevertheless, counsel for both sides, at least within the history of this litigation, continued to try for a multi-district resolution. The litigation underlying this case, which involves property in 46 different jurisdictions, was mediated in Boston in 2007, but the United States District Court for the District of Massachusetts denied final approval of the settlement due to lack of jurisdiction over any of the claims outside of Massachusetts. *Kingsborough v. Sprint Communications Co. et al.*, 673 F.Supp.2d 24, 31 (D. Mass. 2009) ("An action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies…"). Most recently, on August 8, 2011 the U.S. Judicial Panel on Multidistrict Litigation denied the parties' request for centralization of the dispute. *In re: Telecommunications Providers' Fiber Optic Cable Installation Litigation*, 2011 WE 3557461, *1 ("The same factors that warranted denial of the initial motion for centralization in 2002, the absence of common factual issues, the advanced stage of the proceedings and the existence of a settlement agreement—apply with greater weight now.")

When this Court was presented with the parties' request for preliminary approval of the Maine portion of their settlement, the Court reviewed the history of this litigation and of other similar cases in an attempt to get a handle on the issues, which were presented in only the broadest of strokes by the parties in their request for certification and preliminary approval. The Court observed in its research that, despite the apparent validity of most of the plaintiffs' claims in such cases, plaintiffs

were usually thwarted in their efforts to obtain certification of a litigation class. *See e.g. Isaacs v. Sprint Corp. et al.*, 261 F.3d 679, 682 (7th Cir. 2001) (reversing certification of a nationwide litigation class in this litigation, stating, "this is hardly a case in which class action treatment is obviously appropriate. Quite the contrary, it seems decidedly inappropriate," and citing the diversity of individual interests and laws applying to the proposed class), *Niedhardt v. TCI Midcontinent LLC*, 2011 WL 1527030 (D.N.D. April 20, 2011) (denying certification of a litigation class due to lack of typicality), *Kirkman v. North Carolina Railroad Co. et al.*, 220 F.R.D. 49 (M.D.N.C. 2004) (denying certification of a litigation class due to lack of commonality, typicality and superiority), *Johnson v. Kansas City Southern et al.*, 224 F.R.D. 382 (S.D. Miss. 2004) (denying certification of a litigation class because of a lack of predominance—specifically that the identification of qualifying class members and of the strength of their claims would have required individualized review of thousands of title documents), *Nudell v. Burlington Northern and Santa Fe Railway Co.*, 2002 WL 1543725 (D.N.D. July 11, 2002) (denying certification of a multi-district litigation class due to lack of predominance and typicality), *Ostler v. Level 3 Communications, Inc.*, 2002 WL 31040337 (denying certification to a statewide litigation class due to lack of predominance and superiority).[1]

---

[1] A separate rash of settlements and class certifications involving AT&T and plaintiffs in Ohio, Maine, Connecticut, Arkansas, and New Hampshire was also preliminarily approved in 2001 and 2002 by the Southern District of Indiana as part of a multi-district litigation (an arrangement now rejected in this case by the Panel on Multi-district Litigation). *See Kale v. AT&T Corp.* (S.D. Ind. 2001) involving Ohio property, *Reynolds v. AT&T Corp.*, No. 00-827 (S.D. Ind., March 30, 2001) (order conditionally certifying class and preliminarily approving settlement and notice documents) involving Maine property, *Peschell v. AT&T Corp.* (S.D. Ind. 2001) involving Connecticut property, *Morgan v. AT&T Corp.* (S.D. Ind. 2002) involving Arkansas property, and *Rattee v. AT&T Corp.* (S.D. Ind. 2002) involving New Hampshire property. The dockets for these cases are not

4

The settlement proposed in this case would require landowners along a 41-mile stretch of railroad through York and Cumberland counties to provide perpetual telecommunications easements to Sprint in exchange for up to $1.38 per linear foot of easement. The $1.38 amount comprises payment not only for the easement to be provided going forward, but also damages for any trespass that had occurred between 1988 when the cable was laid and the present day. A complicated scheme involving proof of ownership throughout the entire claim period and pro-rating the $1.38 per foot amount among past and present landowners is proposed. The parties do not identify where the railroad right-of-way lies, nor do they identify the current landowners whose properties will be affected by the proposed easement. The proposed class notice follows a familiar class-action notice format, announcing in bold type on the front of the envelope, "If you Own or Owned Land Under or Next to Railroad Rights of Way Where Fiber-Optic Cable Was Installed, You Could receive Money from a Class Action Settlement." What it does not state, which the Court believes to be a core component of this case, is that the rights of property owners of land underlying railroad rights of way in York and Cumberland counties may be adversely affected by this proposed class-action settlement, and that failure to respond to the class action will subject the owner to a permanent easement.

While the Court was not prepared to say that the settlement proposed in this case is unfair, it had a number of questions related to the settlement for which it requested further briefing from the parties. Fundamentally, there is the question of

---

electronically available. This Court retrieved physical copies of parts of the docket related to *Reynolds*, but did not request documents from the other related cases, and therefore does not have docket numbers associated with these cases.

why Sprint is agreeing to a class settlement when the trend among courts in these cases is to deny certification of a litigation class. *See e.g. Niedhart v. TCI Midcontinent LLC*, 2011 WL 1527030 at *6 (D.N.D. April 20, 2011), *Nudell v. Burlington Northern and Santa Fe Railway Co., et al.*, 2002 WL 1543725 at *5 (D.N.D. July 11, 2002), *M.A.S. Hallaba v. Worldcom Network Services, Inc. et al.*, 196 F.R.D. 630, 636 and 640 (N.D. Okl. 2000).

In the typical class action under Fed. R. Civ. P. 23 (b)(3), the denial of class certification spells victory for the defendant and the end of any practical possibility of recovery by the plaintiffs because the costs of litigation are ordinarily too great compared to the value of individual recovery to make individual suits worthwhile. Here, however, despite a substantial possibility that a litigation class would not be certified, the parties have come to the Court with a proposed class settlement. Sprint stands to gain clear title to a valuable easement across hundreds of individual properties through the settlement of this litigation, and this provides a serious incentive for it to reach out for a settlement. The Plaintiffs, by contrast, will not merely have their individual claims for trespass extinguished by this settlement, but they will also be burdened with a permanent easement on their properties unless they opt out of the settlement. This unusual circumstance requires the exercise of particular care in determining that the proposed settlement is "fair, reasonable, and adequate" and notice thereof is directed to the plaintiff class in a reasonable manner. *See* Fed. R.Civ.P. 23(e)(1) and (2).

The parties presented a notice scheme in which direct notice was calculated to reach only 63.7% of the class. Through the use of paid media, actual notice of the existence of the suit was estimated to reach approximately 83% of the class. The parties do not state how much of that initial 63.7% of the class is comprised of current landowners. This statistic is important, however, for two reasons. First, current landowners will be burdened with a perpetual easement as a result of this litigation, making their potential interest far greater than that of former landowners, who experienced only a past trespass to property they no longer own. Second, the addresses of current landowners should be readily identifiable through property records, which makes the proposition of anything much less than direct notice to 100% of current landowners questionable.

The parties also failed to explain why former landowners are proposed to receive a pro-rata share of the total $1.38 per linear foot of settlement value. These former may have at one time had a trespass claim against Sprint, and perhaps a few are still within the statute of limitations to bring such an action, but the parties have not explained why former owners' interests are anywhere near as valuable as the interest current landowners have in the easements that Sprint is proposing to take. The division of interests between former landowners and current landowners creates a lack of commonality that was not addressed by the parties. It also creates complications in the scheme for submitting claims that lowers the potential payout to class members, and raises questions of where any unclaimed funds will eventually go.

Concerns about the fairness of the settlement might nevertheless be allayed if the class representative, Cascade Corporation, is shown to be an adequate representative of the class. The parties, however, provided no details about this company. Among other things, it would have been useful to know how long Cascade has held its property, how large a landowner Cascade is in contrast to other landowners, whether its land is considered more or less valuable on average than the land of other plaintiffs along different parts of the corridor[2], and whether it stands to gain any sort of collateral benefit from the existence of a fiber-optic cable through its property, such as lower-cost access to high-speed communications, which would be of potentially greater interest to a corporate plaintiff than to an individual plaintiff.

The Court was also concerned with the adequacy of the settlement—the provision of a permanent easement for less than $1.38 per linear foot—in light of the merits of the plaintiffs' claims.[3] The parties provided no analysis of their claims

---

[2] The Court's own research, which it asked the parties to confirm, indicates that there is only one railroad corridor through York and Cumberland counties, the Amtrak line. This line traverses some of the most valuable property, including coastal property, in the entire state. If rights in this property were ever to revert to the underlying landowners, the value of some of the land could increase significantly.

[3] In one of the early reported decisions, *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978 (7th Cir. 2002) (Coffee, Wood, Williams), the settlement provided for the plaintiff class to receive cash payments of $6,000 per linear mile ($1.14 per linear foot) *plus* shares in a corporation containing fiber optic assets in exchange for each plaintiff providing the defendant with a permanent telecommunications easement across their properties. *Id.* at 982.

A 2002 report by the National Oceanic and Atmospheric Administration, available at sanctuaries.noaa.gov/library/national/fmvfinalreport.pdf, estimated that the fair market value of a telecommunications easement was in the range of $40,000 to $100,000 per linear mile ($7.58 to $18.94 per linear foot). While the value of such an easement underneath an active railroad easement would logically be subject to some discount because the property is already burdened, this analysis at least indicates a value of the easement to the buyer, whose use would be the same whether the property is already encumbered or not, and raises questions whether the Plaintiffs in this case are getting a fair deal at less than $1.38 per linear foot.

and defenses, nor of the history of the 41-mile railroad corridor at issue in this case. The parties' submissions do not address whether the railway was created at one time by a single legislative grant or whether it was put together through individual negotiations with different landowners, which would create further potential for divergent rights among the plaintiff class.

The Court also asked the parties to review whether, in fact, it has jurisdiction of this case, as the total settlement value of the case is only $432,000 and the amount in controversy required for federal jurisdiction is either $75,000 for any one member of the proposed class, or $5,000,000 aggregate for the whole class.

The parties are certainly entitled to dismiss their case, and indeed the Court's own questions regarding its jurisdiction over this matter may have precipitated their decision to file a stipulation of dismissal. The Court nevertheless feels compelled to provide a written record of these proceedings for review by any interested parties.

SO ORDERED.

                                        /s/ Nancy Torresen
                                        United States District Judge

Dated this 15th day of February, 2012.